# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| RICHARD MARTIN DEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-cv-00485-TMP |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

## I.    Introduction

The plaintiff, Richard Martin Dean, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner")[1] denying his application for a period of disability and Disability Insurance Benefits ("DIB"). Mr. Dean timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g),

---

[1] It appears, from the briefs filed by the Government in other Social Security cases and from news reports, that there is neither a Commissioner nor an Acting Commissioner currently serving in the Administration, but that the functions of the job still are being performed by Nancy A. Berryhill.

1383(c)(3).  The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 17).

The plaintiff was 38 years old on the date of the ALJ's opinion.  (Tr. at 55).  His past work experience includes employment as a ranch hand, truck driver, and materials handler.  (Tr. at 58).  The plaintiff claims that he became disabled on July 6, 2011, due to chronic shoulder pain, high blood pressure, decreased range of motion in left shoulder, respiratory problems, and mental problems.  (Tr. at 20, 24).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he is, the claimant is not disabled and the evaluation stops.  Id.  If he is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  Id.  The decision depends on the medical evidence in the record.  See Hart v. Finch, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step

three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he will be found disabled without further consideration. Id. If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. Id. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. Id. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. Id. The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; once that burden is met, the claimant must prove his inability to perform those jobs

in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that the plaintiff last met the insured status requirements of the Social Security Act on March 31, 2014. (Tr. at 21). He further determined that the plaintiff did not engage in substantial gainful activity from the onset date of July 6, 2011, through March 31, 2014, when plaintiff was last insured. Id. According to the ALJ, the plaintiff has the following impairments that are considered "severe" based on the requirements set forth in the regulations: "panic disorder; major depression disorder, recurrent; cannabis abuse; bilateral carpal tunnel; chronic airway obstruction, NOS[2]; history of polysubstance abuse; degenerative joint disease of the shoulders; status post left shoulder superior glenoid labrum lesion ("SLAP") repair; and, history of minimal distal acromial impingement on rotator cuff, right shoulder." Id. He also determined that the plaintiff's hyperlipidemia and hypertension are non-severe. Id. He determined that the plaintiff's chronic obstructive pulmonary disease "COPD" and restless leg syndrome were not supported by evidence of a medically determinable physical or mental condition (Tr. at 22). The ALJ found that the plaintiff's severe and non-severe impairments, separately and in combination, neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part

_____
[2] NOS is a medical abbreviation for "not otherwise specified."

404, Subpart P, Appendix 1.  Id.  The ALJ found the plaintiff to have moderate restriction in activities of daily life, moderate difficulties in social functioning, and moderate difficulties with regard to concentration.  (Tr. at 23).  The ALJ determined that the plaintiff has the residual functional capacity to perform work at a light level of exertion as defined in 20 CFR 404.1567(b), except that he could use bilateral hand controls on occasion.  Id. The ALJ further elaborated:

> He can occasionally reach overhead with his left non-dominant hand but can frequently reach overhead with his right dominant hand.  He can occasionally reach in all other directions with his left non-dominant hand but can frequently reach in all other directions with his right dominant hand.  He can frequently hand, finger, and feel bilaterally.  He can occasionally climb ramps and stairs but never climb ladders or scaffolds. He can occasionally crouch but never crawl.  He should never be exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes or operate commercial vehicles.  He would be limited to routine and repetitive tasks and simple work-related decisions.  He would be unable to perform at a production rate pace but could perform other goal oriented work.  He should have no more than occasional interaction with the general public but could have frequent interaction with co-workers and supervisors.  He would be able to accept constructive non-confrontational criticism, work in small group settings and be able to accept changes in the work place setting if introduced gradually and infrequently.  In addition to normal breaks, he would be off-task approximately five percent of an eight-hour workday, in non-consecutive minutes.

(Tr. at 24).

According to the ALJ, the plaintiff is unable to perform any of his past relevant work, he is a "younger individual," and has "at least a high school education," as those terms are defined by the regulations. (Tr. at 33). He determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." Id. Even though the plaintiff cannot perform the full range of light work, the ALJ determined that there are a significant number of jobs in the national economy that he is capable of performing, such as price marker, surveillance system monitor, and final assembler of optical goods. (Tr. at 34). The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 6, 2011, through March 31, 2014, the date last insured." Id.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See* Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); Wilson v. Barnhart, 284

F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. Id. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting Consolo v. Federal Mar. Comm'n, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. Miles, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. See Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the

application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III. Discussion

Plaintiff Dean argues that the ALJ's decision should be remanded for any of eight reasons. (Doc. 10, p. 2). First, he contends that the ALJ, without good cause, afforded only "some weight" to the opinions of Dr. Adam Alterman, who is the plaintiff's treating physician. Id. Second, plaintiff asserts that the ALJ substituted his own opinion for that of a medical provider when he failed to give sufficient weight to the opinion of examining psychologist Dr. David Wilson. Id. The third error claimed by the plaintiff is that the ALJ did not accord proper weight to Dr.

Iyer's opinion.  Id.  Fourth, Mr. Dean argues that he meets the criteria for Listing 12.04 and/or 12.06, and thus would be disabled.  Id.  Fifth, plaintiff alleges that the ALJ improperly drew negative inferences from his lack of medical treatment.  Id.  Sixth, plaintiff claims that the ALJ's RFC finding is conclusory, violative of SSR-96-8a, and not supported by substantial evidence.  Id.  The plaintiff's seventh claim of error is that the ALJ failed to give reasons why he found the plaintiff not credible.  Id.  Eighth, Dean claims that the ALJ did not adequately develop the record regarding his medications and the side effects of that medication.  Id.  The addresses each of these in turn.

### A. Dr. Adam Alterman

The plaintiff first argues that the ALJ failed to give the opinion of his treating physician, Dr. Adam Alterman, sufficient weight and failed to articulate good cause for doing so. (Doc. 10, pp. 19-20).  The Commissioner argues that the ALJ's articulated reasons demonstrate good cause for only giving "some weight to the opinions of Dr. Adam Alterman" despite his treatment of plaintiff.  (Doc. 13, p. 6).  The ALJ stated that Dr. Alterman's opinion was not entitled to substantial or controlling weight because: (1) "his own longitudinal record does not support many of his conclusions," (2) he was not treating the plaintiff in 2011, when the disability allegedly began, and thus, cannot provide any information about plaintiff's condition at that time, (3) his opinion fails to account for the plaintiff's

ability to work as a truck driver during the time he was diagnosed as having crippling limitations, and (4) his opinions about the plaintiff's mental limitations in terms of attention and concentration are without foundation in the medical reports. (Tr. at 32).

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. See 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing Lewis, 125 F.3d at 1440); see also Edwards v. Sullivan,

937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." Lewis, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. See, e.g., 20 C.F.R. § 404.1546(c).

In July 2014 Clinical Assessment of Pain (Tr. 389), Dr. Alterman opined that plaintiff (1) could sit for eight hours, (2) could stand for one hour, (3) could walk for less than 30 minutes, (4) would need to lie down, sleep, or prop up his legs for five out of eight day time hours, (5) could perform a task without a break for less than 30 minutes, and (6) could maintain attention and concentration for less than 15 minutes. (Tr. at 391). Dr. Alterman also opined that the limitations

dated to July 6, 2011, when plaintiff alleges he became disabled. Id. The ALJ afforded these opinions "some weight." (Tr. at 32).

The Commissioner has pointed out that Dr. Alterman's treatment notes from 2012 to 2014 demonstrate some limitations in the plaintiff's use of his shoulders, including a finding of reduced range of motion in January 2012, improved strength and range of motion in March 2012, new aching pain in July 2012, and crepitus and tenderness with palpation in 2014. (Doc. 13, p. 7). However, Dr. Alterman's records do not support his opinion that plaintiff is limited in his ability to sit or stand. Id. There is no reference in his treatment notes whatsoever that Mr. Dean is unable to stand or walk. (Tr. at pp. 342-383). Further, even as to Mr. Dean's shoulder pain, which on some occasions Dr. Alterman found tenderness and/or limited range of motion (Tr. at pp. 349, 352, 354, 356, 358, 367, and 370), his treatment notes repeatedly recorded that the plaintiff's neurological examination found "motor strength normal upper and lower extremities." (Tr. at pp. 358, 361, 364, 367, 370, 374, and 379). Additionally, the claimant testified at the hearing before the ALJ that he could use his right arm above his head, could lift a gallon of milk with his right arm, and can use his left arm for tasks at or below eye level. (Tr. at pp. 68-70).

Although Dr. Alterman noted that the claimant had generalized anxiety disorder, he was treated successfully with medication. Indeed, in treatment notes

dated August 19, 2013, there is no mention at all of anxiety or depression. (Tr. at pp. 377-380). Therefore, the mental limitations that Dr. Alterman opined to exist in 2014 were not supported by his own treatment notes. Id. Additionally, Mr. Dean testified that while he has problems with short-term memory, he has no problems following instructions or making decisions. (Tr. at pp. 71-72).

The court finds that there was "good cause" for the ALJ's decision to afford the opinion of Dr. Adam Alterman "some weight." As an initial matter, Dr. Alterman was not treating the patient in 2011. (Tr. at 342). Thus, the opinion that plaintiff's disabling limitations dated to 2011 is not based on his diagnosis as a treating physician. Id. Additionally, Dr. Alterman's medical records and progress notes do not support his assertion that plaintiff is limited in his capacity to sit, stand, or walk, or that plaintiff would need to lie down or otherwise rest for five out of eight daytime hours. (Tr. at 342-82). Plaintiff's complaints most commonly relate to shoulder pain. See, e.g., id. at 342, 353-4, 356, 359, 361. In fact, Mr. Dean only reported musculoskeletal pain, other than that in his shoulders, on his first visit with Dr. Alterman on January 27, 2012, and on August 19, 2013. (Tr. at 342, 377). Plaintiff was diagnosed with restless leg syndrome on April 22, 2013. (Tr. at 365). However, the court finds no testing or other examination that resulted in this diagnosis, nor does it appear that the diagnosis was the result of any new complaint of the plaintiff because the purpose of this visit was a four week follow-

up.  Id.  Therefore, the court can find nothing in the medical records to support this diagnosis or indicate that it is severely limiting or affects plaintiff's ability to sit, stand, or walk.  Id. at 365, 367, 370-1, 374, 377, 382.  Additionally, the plaintiff reported ankle pain on August 19, 2013, but, on November 15, 2013, he no longer reported the pain.  Id. at 377, 382.  The court can find no support in the records for the opinion that plaintiff had disabling physical limitations except with regard to his shoulders.

Similarly, Dr. Alterman never diagnosed the plaintiff with a condition or referred him to treatment for a condition that would explain his opinion that plaintiff had such serious limitations in his ability to concentrate or maintain attention.  See id. at 342-82. On February 6, 2012, Mr. Dean saw Dr. Alterman, and his primary complaint at that visit was anxiety.  (Tr. at 346).   Plaintiff was started on Clonazepam and Paroxetine Hydrochloride.   After starting these medications, plaintiff did not complain of further issues.  Dr. Alterman either noted that plaintiff was "negative" for psychiatric problems; oriented to person, place, and time; or no remarks or notations were made about his psychiatric issues.  See id. at 342-82.  The court agrees with the ALJ that many of Dr. Alterman's findings appear to be wholly incongruous with the doctor's treatment notes. The court also has confirmed that the patient did not establish care with Dr. Alterman until 2012.

(Tr. at 342). Therefore, good cause exists to afford lesser weight to this opinion than is normally afforded to a treating physician.

## B. Non-Treating Physicians

As addressed previously, the ALJ must consider several factors in determining the weight to be given to a medical opinion. 20 C.F.R. § 404.1527(c). Different types of medical sources are entitled to differing weights. The opinion of a treating physician, who has an ongoing relationship with the patient, is entitled to the greatest weight. 20 C.F.R. § 404.1502. A non-treating physician or psychologist, who has examined the patient but does not treat the patient, is entitled to less weight. Id. The least weight is given to a non-examining medical source, who may provide an opinion based on the record but who has not examined the patient. Id. Even so, any medical source's opinion can be rejected where the evidence supports a contrary conclusion. See, e.g., McCloud v. Barnhart, 166 Fed. App'x 410, 418-19 (11th Cir. 2008).

### 1. Dr. David Wilson

The ALJ gave little weight to the opinion of Dr. David Wilson. (Tr. at 32). Plaintiff asserts that this is reversible error because the ALJ has substituted his opinion for the opinion of the medical expert. (Doc. 10, p. 23). The Commissioner argues that the ALJ's decision to afford little weight to the 2015 opinion of Dr. Wilson was supported by substantial evidence. (Doc. 13, pp. 9-10).

The ALJ gave the following explanation for his decision to afford little weight to the opinion of Dr. Wilson:

> The undersigned afforded little weight to the opinions of Dr. Wilson as seen in Exhibit 13F, as only two of the records provided to him existed prior to 2014; the claimant was not taking any medication at the time of his examination unlike his past history of reported compliance; his opinions, in any event, are wholly inconsistent with the great weight of the medical evidence of record, which does not reveal the presence of such persistently serious limitations.

(Tr. at 35).

Dr. Wilson was not a treating physician, so his opinion was not entitled to the greatest weight unless it was bolstered by the evidence. See 20 C.F.R. § 404.1502. Dr. Wilson reviewed medical records from Doctor's Medical Care of Gadsden, Rainbow Healthcare, Riverview Regional Medical Center, Jack Bentley PhD, Marshall Medical Center South, and Dr. Kevin Lackey. (Tr. at 484). Only two of these records, Doctor's Medical Care of Gadsden and Rainbow Healthcare, relate to plaintiff's treatment before March 31, 2014, when plaintiff last met the insured status requirements. Id. Plaintiff drove himself to his appointment with Dr. Wilson, arrived on time, and was dressed appropriately. Id. at 487-8. Plaintiff's "thought processes were intact," "his speech was clear and normal in rate," and "he was cooperative and respectful." Id. at 488. He reported anxiety

attacks and depression, but also stated that those were helped by Klonopin. <u>Id.</u> Plaintiff reported he was not currently taking the Klonopin or the Paxil. <u>Id.</u>

Dr. Wilson described the plaintiff as having "very poor mental control and attention," "problems with short term and working memory," and a prorated Verbal Comprehension Index of 90. <u>Id.</u> On a Mental Health Source Statement, Dr. Wilson opined that the plaintiff would miss 30 out of 30 days of work due to his psychological symptoms. <u>Id.</u> at 490. Dr. Wilson also opined that these limitations dated back to July 6, 2011. <u>Id.</u>

The only way that Dr. Wilson could have determined that plaintiff's disabling limitations dated to 2011 is through his review of the records since his evaluation did not occur until 2015. (Tr. at 484). However, those records do not support a finding of such severe mental impairment. As discussed *supra*, plaintiff reported depression and anxiety to Dr. Alterman in 2012 and 2013, was given psychiatric medications, and had minimal complaints after that. (Tr. at 342-82). The records from Doctor's Medical Care of Gadsden show that plaintiff complained of depression in 2010, but by 2011, plaintiff no longer complained of the depression. (Tr. at 325-6).

Also, the court agrees that Dr. Wilson was unable to obtain an accurate assessment of plaintiff's mental limitations since the plaintiff was not taking his medication at the time of the assessment. (Tr. at 488). Plaintiff admitted that the

medication significantly improved his anxiety and depression symptoms. Id. Dr. Wilson's opinion also is inconsistent with his reports about plaintiff's condition, orientation, and disposition during the assessment. Id. at 487-8. The fact that plaintiff drove himself, arrived on time, was cooperative and respectful, and was dressed and oriented appropriately indicates a much higher level of mental functioning than was described in Dr. Wilson's opinion. Id. As such, the court finds that the ALJ's decision to afford little weight to Dr. Wilson's opinion is supported by substantial evidence in the record, including Dr. Wilson's own notations made at the assessment.

### 2. Dr. Sathyan Iyer

The ALJ afforded some weight to the medical opinion of Dr. Iyer that was provided in the Medical Statement Form. (Tr. at 32). The plaintiff asserts that the ALJ did not afford sufficient weight to this medical opinion. (Doc. 10, p. 28). The Commissioner argues that the ALJ decision was supported by substantial evidence. (Doc. 13, p. 15). The ALJ gave only some weight to Dr. Iyer's opinion that the plaintiff could perform only a restricted range of sedentary work. (Tr. at 32). The ALJ gave the following justifications for his decision: (1) inconsistencies in the doctor's opinion on the Medical Statement Form, initial opinion, and objective findings; (2) inconsistency between his opinion and the great weight of medical evidence; (3) and that the ALJ believed that the opinion was based upon the

plaintiff's subjective pain complaints rather than medical diagnosis or evaluation. Id.

Dr. Iyer opined that the plaintiff could occasionally carry or lift up to 10 pounds, but never carry or lift weights heavier than 10 pounds. (Tr. at 398). He also opined that the plaintiff could sit, stand, or walk continuously for one hour or less and that the plaintiff could sit for four hours, stand two hours, and walk for two hours in an eight hour work day. (Tr. at 399). This opinion was dated October 20, 2014, almost seven months after the date Mr. Dean was last insured (March 31, 2014). (Tr. at 403). Yet, just two days earlier, Dr. Iyer completed a physical examination of the plaintiff and found he had full range of motion and strength in all of his joints except his shoulders. Id. at 396-7. In a comment at the end of that examination Dr. Iyer concluded the following about the plaintiff: "In his current condition because of the bilateral shoulder problems, he will have impairment of functions of both upper extremities in such activities such as pushing, pulling, carrying heavy weights, and overhead activities. He does not appear to have any other physical limitation." Id. at 395.

The court finds that there was substantial evidence for the ALJ to assign only some weight to the opinion of Dr. Iyer. The ALJ's determination that the opinion was based largely upon the subjective pain complaints of the plaintiff is exactly the type of factual conclusion that this court is not to second guess.

Additionally, the court agrees that Dr. Iyer's opinion is inconsistent with his own findings.  (Tr. at 396-9).  The results of his physical examination do not support a finding that plaintiff is so severely limited and restricted to sedentary work.  In addition to being inconsistent with his own physical examination, Dr. Iyer's opinion is inconsistent with plaintiff's medical records from Dr. Alterman where the plaintiff rarely had any complaints unrelated to his shoulders.  Id. at 342-82.  Further, as noted above, these limitations are inconsistent with the claimants' testimony at the ALJ's hearing, where he agreed that he could lift his right arm above his head, could lift a gallon of milk with his right arm, and can use his left arm for activities not involving weight at or below eye level.  It is clear to the court that the ALJ weighed the evidence, noted the inconsistencies, and decided to assign only "some weight" to the opinion.

## C. Listings 12.04 and 12.06

The ALJ did not find that the plaintiff met the criteria for Listing 12.04[3] or 12.06[4].  (Tr. at 22).  The plaintiff asserts that he meets the criteria for the Listings

---

[3] **12.04 Affective Disorders**: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

   A. Medically documented persistence, either continuous or intermittent, of one of the following:
      1. Depressive syndrome characterized by at least four of the following:
         a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions, or paranoid thinking; or
2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking;

or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § 404, subpart p, appendix 1 (Effective: December 12, 2007 to September 28, 2016).

[4] **12.06 Anxiety Related Disorders**: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example,

and for the ALJ to find otherwise is reversible error. (Doc. 10, p. 30). The Commissioner, on the other hand, contends that the ALJ's decision that the plaintiff did not meet the criteria in Listings 12.04 or 12.06 is supported by substantial evidence. (Doc. 13, p. 20).

The burden of proving that he meets or equals a Listing is on the plaintiff. Davenport v. Astrue, 403 F. App'x 352, 353 (11th Cir. 2010) (citing Barron v.

confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

    A. Medically documented findings of at least one of the following:
        1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
            a. Motor tension; or
            b. Autonomic hyperactivity; or
            c. Apprehensive expectation; or
            d. Vigilance and scanning;
      or
        2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
        3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
        4. Recurrent obsessions or compulsions which are a source of marked distress; or
        5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
    AND
    B. Resulting in at least two of the following:
        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration.
    OR
    C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. § 404, subpart p, appendix 1 (Effective: December 12, 2007 to September 28, 2016).

Sullivan, 924 F.2d 227, 229 (11th Cir. 1991). In order to meet a listing, a plaintiff must meet all of the specific criteria for that Listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not sufficient for plaintiff to demonstrate that he has an ailment that manifests only a few or even most of the criteria, even if the ailment manifests those criteria in an especially severe way. Id. Plaintiff must carry the burden by presenting evidence of a diagnosis of a condition covered by the Listings and a treatment history demonstrating that the durational requirements are met. Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). If plaintiff is instead asserting that he has an ailment which equals a listing, he must show that the ailment(s), either singularly or in combination, equal the Listing in terms of severity. Id.

The ALJ focused on whether the plaintiff met the requirements of Paragraph B of the Listings but found that the plaintiff had at most moderate, not marked or extreme, difficulties in areas specified and had experienced no episodes of decompensation of extended duration. (Tr. at 23). Therefore, the requirements of Paragraph B were not satisfied, and, accordingly, the plaintiff could not meet the criteria of either Listing 12.04 or 12.06. Id. The ALJ also reviewed whether the plaintiff met the requirements of Paragraph C under each Listing. Id. The ALJ found that the plaintiff did not meet the requirements because he had not experienced repeated episodes of decompensation, there was no residual disease

process which would be thought to result in episodes of decompensation with an increase in mental demand, and Plaintiff had not shown that he needed a highly supportive environment or was unable to function outside of his home.  Id.

Plaintiff's wife reported that they were married and living together in 2013. (Tr. at 242).  Plaintiff reported that he fed, watered, and bathed his dogs by himself.  (Tr. at 227).  He reported that he was able to prepare his own meals, sweep the floors, dust furniture, wash dishes, do laundry, and make the bed.  (Tr. at 228).  Plaintiff reported that he was able to leave the house alone, was able to drive, and shopped in stores.  (Tr. at 229).  He also reported the ability to pay bills, count change, manage a savings account, and use a checkbook and money orders. Id.  Plaintiff reported physical limitations and that he "would rather stay at home by [himself]."  (Tr. at 231).  Plaintiff's wife reported that he had no troubles with personal care, needed a reminder to take his medication, prepared his own foods, performed chores around the house, shopped for groceries, and managed his own finances.  (Tr. at 242-9).  It appears from those accounts that plaintiff functioned largely autonomously with some degree of physical and mental limitation.

Whether the plaintiff met the criteria of the Listings is a legal conclusion, but one that requires careful weighing of medical documentation and reports.  The court does not and will not reweigh evidence or analyze the factual determinations of the ALJ.  In the instant case, the ALJ made clear that he considered the facts,

compared them to the statutory requirements, and determined that the plaintiff did not meet the requirements of the Listings. The plaintiff has not pointed to specific evidence which demonstrates that he meets the criteria, nor has the court found any such evidence in the plaintiff's medical records. It is clear that plaintiff has difficulties in mental functioning; however, a review of the record demonstrates that there is substantial evidence to support the ALJ's finding of moderate, rather than marked, difficulties.

### D. Lack of Medical Treatment

Plaintiff contends that the ALJ committed reversible error because he drew adverse inferences from the fact that the plaintiff had not sought medical attention for his right shoulder. (Doc. 10, p. 35). The Commissioner argues that the ALJ did not use the plaintiff's lack of medical attention improperly because he considered it only in making a credibility determination about plaintiff's subjective complaints. (Doc. 13, p. 28). Specifically, the ALJ stated: "Other than some pain medication, the claimant did not seek any treatment for his right shoulder after his left shoulder surgery, and oddly, given his allegations did not seek any physical therapy or surgery on his right shoulder." (Tr. at 31). When questioned during the hearing, the plaintiff alleged that the reason he had not sought medical treatment was because he lacked the insurance or funds to do so. (Tr. at 75). The ALJ also specifically addressed the plaintiff's asserted lack of funds. The ALJ determined

that it was not credible that the only reason that the plaintiff had not sought treatment was due to financial hardship because the plaintiff had the funds to support an extensive tobacco and recreational drug habit. (Tr. at 31).

According to SSR 96-7p[5], a long term history of seeking treatment and medical compliance can bolster a claimant's subjective pain reports. 1996 WL 374186 at *7-8 (July 2, 1996). On the contrary, lack of medical treatment and non-compliance can weigh against the credibility of plaintiff's allegations of severe pain. Id. An ALJ may consider the compliance or non-compliance of a plaintiff and a plaintiff's failure to seek treatment in making determinations of credibility. Id. However, before the ALJ can use a claimant's failure to seek treatment against him, the ALJ must consider the reasons the claimant gives for not seeking treatment or for failing to follow the prescribed course of treatment. Id. One of the acceptable reasons that a claimant may not seek treatment or comply with treatment is the inability to pay for the treatment if the claimant does not have access to free or reduced cost healthcare. Id.

---

[5] SSR 96-7p, which was in effect at the time of the claimant's adjudication by the ALJ, has been superseded by SSR 16-3p, which took effect in March of 2016. The new regulation removes the term "credibility" from the policy, and clarifies that "subjective symptom evaluation is not an examination of an individual's character." SSR16-3p, 2016 WL 1119029 at *1. Plaintiff does not argue that the newer regulation should apply retroactively, and the Eleventh Circuit Court of Appeals has recently determined that it does not. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1308 (11th Cir. 2018) (holding that the rule "applies only prospectively and does not provide a basis for remand"). Accordingly, the court evaluates the ALJ's assessment in light of SSR 96-7p.

Mr. Dean's psychiatric conditions seemingly responded very well to treatment. (Tr. at 342-82). On February 6, 2012, he visited Dr. Alterman complaining of anxiety and was prescribed medication. (Tr. at 346). After beginning that medication, Plaintiff no longer complained about his symptoms to his doctor, and his medical records indicate that his doctor found him to be in a psychiatrically appropriate condition during check-ups for other ailments. Id. at 347-82. Plaintiff even admitted that the medication was helpful in treating his conditions. Id. at 488. From a physical standpoint, plaintiff's only consistent complaint was shoulder pain. (Tr. at 342-82). Plaintiff did not attend physical therapy or seek follow up care for his left shoulder and never sought treatment other than pain medication for his right shoulder (Tr. at 62-3, 329, 342-82).

Plaintiff asserts that the reason he was not following his prescribed treatments and did not seek needed treatments was because he had no insurance and could not pay out-of-pocket. See e.g., id. at 60, 63. However, he also admitted that he smoked one pack of cigarettes per day. Id. at 64. Additionally, Plaintiff admitted that he was a regular marijuana user. See, e.g., id. at 489. The ALJ had reason to question the plaintiff's assertion of lack of money as a reason for not seeking pain treatment or therapy for his right shoulder.

More importantly, the plaintiff's argument fails to recognize that (1) the ALJ did not deny the claim solely based upon the lack of medical treatment and (2) the

ALJ considered the reasons the plaintiff gave to explain his non-compliance. (Tr. at 30-31). The ALJ's use of the lack of medical treatment was congruous with the use provided for by SSR 96-7p. See 1996 WL 374186 at *7-8. The ALJ used plaintiff's lack of medical treatment to assess the credibility of plaintiff's testimony. (Tr. at 30-31). Additionally, the ALJ considered that the plaintiff alleged that he was unable to seek and continue needed treatment because he did not have insurance and could not afford the needed medications, surgery, or therapy. (Tr. at 31). The ALJ found plaintiff's explanation to be lacking in credibility because during the same time that plaintiff could not afford medical treatment he was able to afford cigarettes and illegal street drugs. Id. Therefore, the ALJ's use of the plaintiff's lack of medical treatment was in line with the statutory mandate and is not a reversible error.

### E. Residual Function Capacity (RFC) to Perform Light Work

Plaintiff argues that the ALJ's finding that he can perform light work with an extra limitation is not supported by substantial evidence, is conclusory, and is violative of SSR 96-8a. (Doc. 10, p. 2). The Commissioner responds that the RFC is supported by substantial evidence. (Doc. 13, p. 25). To reiterate, the ALJ found that the plaintiff had the following RFC:

> He can occasionally reach overhead with his left non-dominant hand but can frequently reach overhead with his right dominant hand. He can occasionally reach in all other directions with his left non-

dominant hand but can frequently reach in all other directions with his right dominant hand. He can frequently hand, finger, and feel bilaterally. He can occasionally climb ramps and stairs but never climb ladders or scaffolds. He can occasionally crouch but never crawl. He should never be exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes or operate commercial vehicles. He would be limited to routine and repetitive tasks and simple work-related decisions. He would be unable to perform at a production rate pace but could perform other goal oriented work. He should have no more than occasional interaction with the general public but could have frequent interaction with co-workers and supervisors. He would be able to accept constructive non-confrontational criticism, work in small group settings and be able to accept changes in the work place setting if introduced gradually and infrequently. In addition to normal breaks, he would be off-task approximately five percent of an eight-hour workday, in non-consecutive minutes.

(Tr. at 24).

The RFC is a determination of the work that a plaintiff can do, in spite of his limitations. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). This measure represents the ceiling, or the maximum, that a claimant is capable of doing given his medical condition. Id. When there is no allegation of a physical or mental impairment and the records contains no medical evidence that such impairment exists, the ALJ is to assume that that there is no impairment of that functional capacity. Id. at *3. When establishing an RFC for the claimant, the ALJ must explain how the evidence supports the RFC. Specifically, SSR 96-8p requires, as follows:

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

. . .

The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. In instances in which the adjudicator has observed the individual, he or she is not free to accept or reject that individual's complaints solely on the basis of such personal observations.

. . .

The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Mr. Dean's medical records support a finding that he has some mental and physical limitations. See, e.g., (Tr. at 329-40, 342-82, 386-8, 389-91, 393-403). In his brief, the plaintiff quotes heavily from the opinion of Dr. Iyer in support of his assertion that the RFC is conclusory and not supported by substantial evidence.

(Doc 10, p. 38). However, as was discussed in-depth above, the ALJ gave only "some weight" to Dr. Iyer's opinion, and there is substantial evidence in the record to support that. See (Tr. at 32). Because the court does not find it was a reversible error to afford only some weight to the opinion, it follows logically that the court does not find it to be a reversible error that the ALJ did not adopt the limitations in the opinion when determining the RFC. In any event, it is the duty of the ALJ, not a consulting physician, to determine the RFC. While the medical opinions of physicians related to the nature of effect of impairments are important, the determination of the claimant's ability to work and at what exertional level remains from the Commissioner, acting through an ALJ.

In determining the RFC, the ALJ must "consider[ ] all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" as required by 20 CFR § 404.1529 and SSRs 96-4p and 96-7p. (Tr. at 24). Additionally the ALJ considered opinions as required by 20 CFR § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (Tr. at 24). Additionally, the ALJ looked at the plaintiff's daily activities and conditions reported by the plaintiff on forms and during his testimony at the hearing, the report from the plaintiff's wife, the plaintiff's medical records, and the doctors' opinions. (Tr. at 23-33). In so reviewing the ALJ specifically and clearly articulated the weight assigned, what credibility determinations he made, and the

factual weighing of evidence that he used to determine plaintiff's RFC.  Id.  It is not within the province of this court to reweigh the evidence, make credibility determinations, or assign weight to evidence, and the court declines plaintiff's urging to do so here.  The ALJ's determination regarding the plaintiff's RFC is supported by substantial evidence.

### F. Claimant's Credibility

The plaintiff contends that that ALJ erroneously concluded that the plaintiff's subjective complaints of pain were not entirely credible.  (Doc. 10, p. 42).  The Commissioner alleges that the ALJ had substantial evidence to discredit the complaints.  (Doc. 13, p. 27).

The Eleventh Circuit established a pain standard to direct ALJs in evaluating claimant's subjective allegations of disabling pain.  Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence.  See Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995).  To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing Holt v.

Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); see also Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). Under Social Security Ruling ("SSR") 96-7p,[6]

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

---

[6] SSR 96-7p is applicable to this case as it was in effect at the time of the ALJ's determination on January 15, 2016. SSR 96-7p was superseded by SSR 16-3p, effective March 26, 2016; however, it does not apply retroactively. See Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1308 (11th Cir. 2018) ("SSR 16-3p applies only prospectively...).

SSR 96-7p, 61 FR 34483-01 (Effective July 2, 1996) (superseded by SSR 16-3p, 2017 WL 5180304, at *10 (March 26, 2016)).  Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'"  Dyer, 395 F.3d at 1210 (quoting Foote, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." Id.

The ALJ determined that the plaintiff met the first step of the pain standard; that is, the plaintiff provided evidence of an underlying medical condition.  See Dyer, 395 at 1210.  The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. . . ." (Tr. at 30).  However, the ALJ determined that the plaintiff did not meet the second or third steps of the pain standard.  See Dyer, 395 at 1210.  The ALJ held that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. at 30).  The ALJ further explained,

> In terms of the claimant's alleged physical limitations, the claimant has no diagnosis of chronic obstructive pulmonary disease and did not have a torn rotator cuff repair.  Instead his shoulder problems arose from an interior labral tear that was repaired successfully via SLAP surgery.  His right shoulder was not reported to have serious

problems, though it did have some impingement. Other than some pain medication, the claimant did not seek any treatment for his right shoulder after his left shoulder surgery and oddly, given his allegations, did not seek any physical therapy or surgery on his right shoulder. Although a pain disorder was alluded to by Dr. Bentley, this appears to be based on the claimant's representations to Dr. Bentley, and, in any event, this is inconsistent with the great weight of the medical evidence of record that shows no such diagnosed persistent pain disorder. The claimant does have some carpal tunnel syndrome, but it was not described by his doctor to be severe and he has not been recommended any surgery at this point.

The undersigned notes that the claimant has been assessed with obesity, and his medical records show a repeated pattern of excessive weight for his height (Exhibits 2F-16F). Therefore, the record supports a diagnosis of obesity. The undersigned has evaluated the claimant's obesity and accompanying impairments in accordance with Social Security Ruling 02-1p. This ruling provides that the undersigned must assess the effect that obesity has on the claimant's ability to perform routine movement and necessary physical activity within the work environment. Clearly the claimant's obesity affects his ability to perform some of physical requirements of work, as it is likely that his obesity contributes to his complaints of pain and discomfort, as well as his breathing difficulties and hypertension. However, there is no evidence that the claimant's obesity precludes him from performing work at the light and sedentary levels of exertion, as these levels of work activity would minimize the effect of the claimant's impairments on his joints and body systems.

Reasonably and considering his established medically determinable physical impairments, both severe and non-severe, the claimant would have significant limitations in his ability to perform the exertional requirements of the broad world of work. *However, despite his allegations, his medical records do not show the presence of any impairments that would support the severe limitations he alleges.* Nevertheless, a restriction to a limited range of light work would accommodate all of the claimant's medically documented symptoms which arise from his medically determinable impairments.

Regarding his mental impairments, the claimant does have the medically determinable mental impairments of panic disorder; major depressive disorder, recurrent; cannabis abuse; and a history of polysubstance abuse (Exhibits 1F-16F). Nevertheless, the medical evidence of record shows that when the claimant is compliant with his treatment, his symptoms are generally mild, to at most, moderate in intensity (5F, 9F-12F, and 15F). *Although the claimant alleged he was unable to afford his medications, this is inconsistent with his constant smoking and recurrent use of an illegal or street/recreational drug. Moreover, the medical evidence of record does not show that the claimant was unable to receive free or greatly reduced medical care given his circumstances, but was able to continue his tobacco use and self-described daily marijuana abuse. Although the claimant alleged significant side effects arising from his medications, his treatment notes do not show that he ever persistently reported such limitations to his doctors.*

Despite this, the claimant does have legitimate significant persistent mental limitations because of the combination of his chronic discomfort, mental impairments, and reasonable side effects of his medications. The undersigned has incorporated these limitations into the residual function capacity as seen above.

(Tr. at 31-32) (emphasis added).

The court finds that there is substantial evidence to support the ALJ's finding that the plaintiff's statements about the limiting effects of his impairments are not credible. The medical records support a finding that plaintiff has physically disabling shoulder pain. See, e.g., id. at 342-82. The medical records also support a finding that the plaintiff has some mental limitations from anxiety and depression. See, e.g., id. at 342-82. However, plaintiff has never consistently reported to his doctors the type of disabling

ailments, side effects, and issues that he alleged during the pendency of his Social Security disability application, during his hearing with the ALJ, or during this appeal. The ALJ mentioned the claimant's testimony indicating that he is capable of caring for himself, performing some household chores, and driving himself on shopping errands. The ALJ specifically articulated the adequate reasons that he discredited the plaintiff's testimony. See Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988). Affirming the ALJ decision regarding credibility determinations does not require that the record be replete with evidence that the ALJ could have used to support a finding that the plaintiff was not credible. Where, as here, there is a clearly articulated finding that the plaintiff is not credible and there is substantial evidence to support that determination, the court will not intervene. See Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 782 (11th Cir. 2014).

### G. Side Effects of Medication

Plaintiff asserts, as his eighth point of error, that the ALJ failed to develop the record concerning plaintiff's medication and the effects of that medication. (Doc. 10, p. 46). The Commissioner argues that the ALJ had no duty to develop the record as to the side effects of the medication because Plaintiff was first prescribed the medication at issue, Neurontin, in August of 2015, well after the plaintiff's disability insured status expired. (Doc. 13, p. 29).

The ALJ's duty to develop the record is not triggered when the record contains sufficient evidence to make an informed decision. <u>Ingram v. Commissioner of Social Security</u>, 496 F.3d 1253, 1269 (11th Cir. 2007). In plaintiff's case, the record was sufficiently developed to allow the ALJ to make a determination. Plaintiff was prescribed Neurontin (gabapentin) for the first time in August of 2015 (Tr. at 293, 525), well after his insured status expired on March 31, 2014. Therefore, the side effects of the medication are wholly irrelevant to the plaintiff's disability status from July 2011 through March 2014, and the ALJ was not required to develop the record further on this question.

## IV.     Conclusion

Upon review of the administrative record, and considering all of Mr. Dean's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. The determination will be AFFIRMED and this action will be DISMISSED WITH PREJUDICE. A separate order will be entered.

DONE this 5th day of September, 2018.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE